**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 16, 2025**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BELINDA ANA GARCIA, | § | CASE NO. 24-51486-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| BELINDA ANA GARCIA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 24-05067-MMP |
| | § | |
| UNITED STATES DEPARTMENT OF EDUCATION, | § | |
| | § | |
| DEFENDANT. | § | |

**O****RDER** **D****ENYING** **J****OINT** **M****OTION FOR** **E****NTRY OF** **C****ONSENT** **J****UDGMENT**

**I.** **I****NTRODUCTION**

Before the Court is the parties' *Joint Motion for Entry of Consent Judgment* (ECF No. 21).[1] The Court held a hearing on the *Joint Motion*, which included a *Stipulation of Facts* (ECF No. 21, Ex. 1), and took testimony and other evidence from Debtor. While the Court is sympathetic to Debtor's circumstances, based on the evidence submitted, the Court has determined the *Joint Motion* should be denied.

**II.** **J****URISDICTION AND** **V****ENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1409 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Order serves as this Court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052, 9014.[2]

**III.** **B****ACKGROUND**

**a.** **P****ROCEDURAL** **H****ISTORY**

Debtor received her discharge and sued the United States Department of Education ("**DOE**") to challenge the non-dischargeability of her student loan debt. Case No. 24-51486, ECF No. 14; Adv. Proc. No. 24-05067, ECF No. 1. Three days later, Debtor and the DOE filed its first *Joint Motion for Entry of Consent Judgment* with an unsigned stipulation. ECF No. 10. The Court denied this defective motion (ECF No. 10) without prejudice and the parties subsequently filed

---

[1] All citations are to the docket in Adversary Proceeding No. 24-05067, unless otherwise noted. "ECF" denotes the electronic filing number.
[2] All citations and references to procedural rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

this *Joint Motion* with the *Stipulation*. ECF Nos. 18, 21. After a hearing at which the Court took evidence to supplement the *Stipulation*, the Court took the matter under advisement.

Debtor does not challenge whether the student loan debt at issue fits under the category of student loans that are generally non-dischargeable, agreeing that the debt is a "qualified education loan" under 11 U.S.C. § 523(a)(8)(B).[3] Based on the evidence before it, the Court assumes Debtor's student loan debt is non-dischargeable absent a finding of undue hardship. § 523(a)(8).

   b.   **LOAN HISTORY**

Debtor began attending college and taking out student loans backed by the federal government in the 1990s. Her first student loan in 1991 of $1,312 was paid in full. Debtor then took out more student loans to finish her undergraduate education and attend graduate school. By 2003, Debtor earned a master's degree in human resources and accrued almost $60,000 in student loans.

Debtor consolidated all of her undergraduate loans in 2000 and consolidated her graduate and undergraduate loans in 2024. After graduate school, Debtor deferred all student loan acceleration by making interest and fee payments totaling $6,551. Debtor never defaulted on the student loan debt. But Debtor also never made any principal payments to reduce the debt's outstanding balance. As a result, her current student loan debt stands at $99,112.

   c.   **JOB AND INCOME HISTORY**

After obtaining her master's degree, Debtor secured a human resources position at a Target retail store. Later, she chose to leave this job. She indicated she was compelled to leave this job because of her son's addiction problems, but never articulated how those problems necessitated her involvement or her quitting this job, when those problems arose, how those problems

---

[3] All statutory citations and references are to title 11 of the United States Code, unless otherwise noted.

3

presented, when those problems subsided, or how she left this job (e.g., taking a brief leave of absence versus permanently leaving).

Debtor next worked as a mortgage broker and insurance agent until the COVID-19 pandemic in 2020. Debtor never fully articulated why she left these jobs, but vaguely blamed the Great Recession of 2008 for her decision to quit as a mortgage broker and other economic factors for her decision to leave her insurance job. Again, Debtor never articulated how these issues impacted her ability to continue to work, when these issues subsided, or how she managed leaving these industries so as to allow her to return to these jobs at some future point.

Debtor then had a job with the potential to increase her income, but chose to leave that job after her father became ill and later died. That job was not described. As above, Debtor never articulated specific reasons for her departure: why she chose to leave that job, how caring for her father prevented her from working in that job, why others could not care for her father while she worked that job, or, significantly, why her father's care and subsequent death required her to leave that job. The Court is not making light of the death or unidentified illness of Debtor's father but noting that Debtor failed to explain what external forces compelled her to do what she did, rather than Debtor making a conscious choice to separate from employment.

Debtor repeatedly blamed her choices to leave multiple jobs on forces she suggested are outside her control, but never offered evidence of such forces or why she could no longer do these jobs. Debtor also failed to articulate how these alleged external factors compelled those particular choices, or why other viable options were not pursued.

d. **EXPENSE HISTORY AND EXTERNAL FACTORS**

In June 2008, Debtor's son had a daughter but failed to care for the child due to addiction and incarceration. No evidence was submitted about the severity or length of Debtor's son's

4

incarceration or addiction problems after June 2008, and some evidence was submitted that the son is currently working in the city of Schertz. Debtor offered no evidence that her son was incapable of financially supporting or caring for his daughter.

Debtor's granddaughter's mother left Texas at some point and now lives in New Orleans, Louisiana. No evidence was submitted that the mother could not care for or financially support her daughter. Debtor presented no evidence on her efforts to obtain state or federal government assistance for her granddaughter. Debtor has chosen to raise the child since 2008 without help from the child's parents or government assistance.

Debtor testified that at some point, she obtained a judgment against the child's parents ordering them to pay Debtor $200 per month for the child's care ("**Support Order**"). She testified the parents have never paid Debtor the $200 per month for the child's care, despite her son living and working in Schertz. Debtor chose not to enforce the Support Order or pursue a collection action against the child's parents out of fear that they might try to regain custody of the granddaughter. No evidence was presented corroborating that fear; but even if corroborating evidence was presented, that evidence would be insufficient to establish Debtor's legal obligation to continue to care for her granddaughter without parental or government assistance, or after Debtor's granddaughter turns 18.

Debtor's granddaughter will be 17 years old in June and Debtor wants to continue to care for her granddaughter and help her granddaughter attend college. No evidence was presented about any financial assistance the granddaughter might provide for herself or for Debtor's household, and no evidence was presented about the granddaughter's ability to work now or later, after she reaches the age of majority.

Debtor's granddaughter developed asthma after being infected with COVID and at some point, Debtor had surgery to remove a breast cancer tumor. No evidence was presented about how this might affect Debtor's current or future expenses.

### e. CURRENT INCOME AND REPAYMENT OPTIONS

Debtor currently works a job that pays her $22 per hour. Debtor's Exhibit 4 suggests that under certain income driven repayment plans she can pay off her student loan debt in 7 years and 3 months, but the oblique reference in Exhibit 4 fails to identify the monthly payment Debtor would be expected to make under that plan. The *Stipulation* suggests student loan policy is currently in chaos and that some of the repayment plan options previously offered are stayed by court order or the DOE. Of the payment plans listed: $56/month (SAVE),[4] $195/month (REPAY), $293/month (IBR), $540/month (Standard), $555/month (ICR), and $588/month (25 year Extended), Debtor fails to identify which are blocked by court order or DOE directive. Instead, Debtor argues that none of the payment plans will work because Debtor's budget suggests, after paying for necessary expenses, no income is left to contribute to student loan debt.

According to the *Stipulation*, Debtor's current income is just barely sufficient to cover her living expenses. Debtor's Schedules show $0.50 of disposable income. Case No. 24-51486, ECF No. 1. But Debtor testified that her monthly car payment has been reduced from the $389 listed on her schedule to around $100–200. Assuming all expenses have remained the same, this results in Debtor's net monthly income increasing by $189.50 to $289.50.

---

[4] An injunction prevents the DOE from implementing the SAVE program in some states (not Texas). **Missouri v. Biden**, 738 F.Supp.3d 1113, 1157 (E.D. Mo. 2024); **Missouri v. Biden**, 112 F.4th 531, 538 (8th Cir. 2024) (largely upholding the district court's injunction); **Biden v. Missouri**, 145 S.Ct. 109 (2024) (same). The Court does not rest this ruling solely on Debtor's ability to make payments under a SAVE repayment plan, but it remains a valid consideration in the Fifth Circuit.

6

## IV. ANALYSIS

### a. STUDENT LOAN EXCEPTION TO DISCHARGE

Section 523(a)(8) excepts certain student loan debt from discharge, unless it would impose an undue hardship. *United Student Aid Funds, Inc. v. Espinosa (In re Espinosa)*, 559 U.S. 260, 278 (2010). To establish undue hardship a debtor must challenge the debt in an adversary proceeding. Rule 7001(f); *Tingling v. Educ. Credit Mgmt. Corp. (In re Tingling)*, 990 F.3d 304, 308–09 (2d Cir. 2021).

The DOE and Debtor contend the *Joint Motion* and *Stipulation* suggest Debtor has met her burden of proving an undue hardship exists. *Educ. Credit Mgmt. Corp. v. Pratt (In re Pratt)*, 375 B.R. 753, 759 (S.D. Tex. 2007). But the parties' agreement does not end the matter. Under § 523(a)(8), this Court must, on the facts presented, independently determine whether the debtor would face an undue hardship if forced to repay the student loan debt.

In *Espinosa*, the Supreme Court made clear Congress requires a court to independently find an undue hardship exists before a plan discharging student loan debt may be confirmed. 559 U.S. at 278. Although parties can "stipulate[e] to the underlying facts of undue hardship, . . . to comply with § 523(a)(8)'s directive, the bankruptcy court must make an independent determination of undue hardship." *Id.* Section 523(a)(8) requires "the bankruptcy court [to] make an undue hardship finding even if the creditor does not request one." *Id.* at 274–75. To do otherwise would be legal error. *Id.* at 275.

*Espinosa* involved a chapter 13 debtor trying to discharge part of his student loan debt in his chapter 13 plan and a creditor asleep at the wheel. The debtor had filed for bankruptcy within five years of receiving student loans. *Id.* at 264. As part of his chapter 13 plan, the debtor proposed to discharge the debt's accrued interest after he repaid the principal. *Id.* This plan was inconsistent with § 1328(a)(2), which provides a debtor is discharged from all debts addressed by the plan

7

except some debts listed in § 523(a). *Id.* at 269; § 1328(a) ("the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of the title, except any debt . . . (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a).").

Although receiving notice of the debtor's plan and a notice from the chapter 13 trustee of the creditor's impaired treatment under the plan, the creditor did not object to confirmation of the plan and did not appeal the bankruptcy court's confirmation order. *Espinosa*, 559 U.S. at 265, 269. Seven years after the debtor's noncompliant chapter 13 plan was confirmed and two years after the debtor had completed all payments under the plan, the creditor attempted to collect the discharged unpaid interest on the student loan debt. *Id.* at 265–67. The debtor resisted and asked the bankruptcy court to enforce its discharge order. *Id.* at 265. Bailing out the idle creditor, the *Espinosa* court concluded "that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)." *Id.* at 277.

Although *Espinosa* is procedurally different than the case here, its holding still applies: to discharge a self-executing[5] non-dischargeable debt, a bankruptcy court must independently make a finding that the debt is indeed dischargeable. *Altman v. United States Dep't of Educ. (In re Altman)*, Case No. 23-10759, Adv. No. 24-01007, 2025 WL 969319, at *3 (Bankr. W.D. Tex.

---

[5] Self-executing in this context means a creditor need not file a complaint to have its debt declared non-dischargeable. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) ("Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt."); S. Rep. No. 95-989, at *79 (1978) ("This provision [§ 523(a)(8)] is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan."); *Irigoyen v. 1600 West Investments, Inc. (In re Irigoyen)*, 659 B.R. 1, 6 (B.A.P. 9th Cir. 2024) ("Only three subsections of § 523 are not 'self-executing' - § 523(a)(2), (a)(4), and (a)(6) – and thus require a complaint be filed by a creditor by a set deadline."); *Garcia v. Sklar (In re Sklar)*, 626 B.R. 750, 768 (Bankr. S.D.N.Y. 2021) (explaining that § 523(c)(1) describes three non-self-executing discharge exceptions, those found in § 523(a)(2), (4), and (6)). Courts have deemed § 523(a)(8) non-dischargeable debt self-executing. *Hutsell v. Navient (In re Hutsell)*, 620 B.R. 604, 609 n.5 (Bankr. N.D. Ohio 2020); *Walker v. Sallie Mae Servicing Corp., (In re Walker)*, 427 B.R. 471, 476 (B.A.P. 8th Cir. 2010); *Key Bank USA, N.A. v. Karjala (In re Karjala)*, Case No. A06-00350, Adv. No. A06-90058, 2007 WL 666832, at *1 (Bankr. D. Al. Feb. 28, 2007).

8

March 31, 2025); *see* ***In re Kinney***, 456 B.R. 748, 751, 753 (Bankr. E.D.N.C. 2010) ("The Supreme Court acknowledged that Section 523(a)(8) requires a bankruptcy court to make a finding of undue hardship to allow the discharge of student loan debt.") (citing ***Espinosa***, 559 U.S. at 270–71); ***Walker v. Sallie Mae Servicing Corp. (In re Walker)***, 427 B.R. 471, 476 (B.A.P. 8th Cir. 2010) ("[A] debtor's obligation on a student loan remains until there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor.").

This rule applies regardless of whether the case is filed under chapter 13 or chapter 7. Because a confirmed chapter 13 plan is binding on the debtor and all creditors with notice, a creditor's failure to object or appeal is treated as waiver or an admission. *See* ***Travelers Indem. Co. v. Bailey***, 557 U.S. 137, 152 (2009) (concluding final bankruptcy orders, including plan confirmation orders, are binding); ***Greer v. Healthcare Fin. Servs., LLC (In re Greer)***, 498 B.R. 98, 111 (Bankr. S.D. Miss. 2013) ("[A creditor's] failure to object to confirmation or to appeal the confirmation order left the confirmation order a final judgment as to all matters it addressed, including the dischargeability of the student loan debt.") (citing ***Espinosa***, 559 U.S. at 275–76). By not objecting or appealing, a creditor impliedly agrees with its treatment under the plan. And yet, a bankruptcy court must intervene and find an undue hardship exists before a debtor may confirm a plan discharging non-dischargeable student loan debt. Thus, even when a creditor explicitly agrees a self-executing non-dischargeable debt is dischargeable (as here), a bankruptcy court has a duty to independently find the debt is dischargeable. ***Altman***, 2025 WL 969319, at *3; ***In re Vidal***, Case Nos. 12-11758, 12-12319, 12-12340, 12-12563, 2013 WL 441605, at *6 (Bankr. D. Del. Feb. 5, 2013). The court cannot shirk its duty of finding an undue hardship exists. ***In re Kessler***, Case No. 09-60247, 2015 WL 4726794, at *12–13 (Bankr. N.D. Tex. June 9, 2015).

9

b. **UNDUE HARDSHIP STANDARD**

The Bankruptcy Code does not define "undue hardship." The Fifth Circuit has adopted the Second Circuit's ***Brunner*** test interpreting "undue hardship" to mean:

(1) a debtor cannot maintain, based on current income and expenses, a minimal standard of living;

(2) additional circumstances exist indicating the debtor's current state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) the debtor has made good faith efforts to repay their student loans.

***Matter of McCoy***, 810 F. App'x 315, 316 (5th Cir. 2020) (citing ***Brunner v. New York State Higher Educ. Servs. Corp.***, 831 F.2d 395, 396 (2d Cir. 1987)). The Fifth Circuit first adopted the ***Brunner*** test in ***Gerhardt*** because it was "a workable approach to evaluating the undue hardship determination." ***United States Dep't of Educ. v. Gerhardt (In re Gerhardt)***, 348 F.3d 89, 91 (5th Cir. 2003) (internal quotations omitted); *see also* ***Thomas v. Dep't of Educ. (Matter of Thomas)***, 931 F.3d 449, 453–55 (5th Cir. 2019) ("Congress intended to make student loan debt harder to discharge than other types of consumer debt, and the court's adoption of a linguistically accurate and demanding standard fulfills that intent."). Thus, a debtor must satisfy ***Brunner***'s three-prong test to discharge student loan debt.

i. **MINIMAL STANDARD OF LIVING**

***Brunner***'s first prong requires a debtor to show that, based on current income and expenses, they could not maintain a minimal standard of living if forced to repay the student loan. ***Gerhardt***, 348 F.2d at 92; ***Brunner***, 831 F.2d at 396.

A debtor may accomplish this task by showing their reasonably necessary expenses exceed their income. *Id.*; *Griffith v. Cleveland State Univ. Student Loans (In re Griffith)*, Case No. 17-31905, Adv. No. 17-031051, 2021 WL 2762809, at *4 (Bankr. N.D. Tex. June 30, 2021); *Pratt*, 375 B.R. at 760. Although a debtor need not "live in abject poverty before a student loan may be discharged," *Griffith*, 2021 WL 2762809, at *4, "[a] minimal standard of living is one in which a debtor can pay all reasonably necessary living expenses, but no more," *Educ. Credit Mgmt. Corp v. Smith*, Civ. No. H-11-57, 2011 WL 4625397, at *6 (S.D. Tex. Sept. 30, 2011).

Debtor's Schedule J shows her monthly income is $3,141.50 and her monthly expenses are $3,141. Case No. 24-51486, ECF No. 1, p. 47. After reviewing Debtor's expenses, there are two items that warrant a closer look: $389 for a 2012 GMC Terrain and $200 for "entertainment, clubs, recreation, newspapers, magazines, and books." *Id.* at 46.

First, the GMC Terrain is the only vehicle listed on Debtor's Schedule A. *Id.* at 9–10. But Debtor testified she no longer pays $389 because she surrendered that car. Debtor testified she now only pays $100–200 per month for a car. Assuming all other factors remain the same, Debtor's disposable income increases $189 to $289, which would allow Debtor to make the $56 per month payment under the SAVE plan or the $195 per month payment under the REPAY plan, and still maintain a minimal standard of living under her existing budget.

Second, the *Stipulation* does not mention, and Debtor did not testify to, the purpose of the $200 expense for entertainment items. The IRS's 2025 Allowable Living Expenses National Standard does not include a category for "entertainment." National standards: food, clothing, and other items, INTERNAL REVENUE SERVICE (last visited April 21, 2025), https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-food-clothing-and-other-items. Without evidence to support a $200 per month entertainment budget, the

11

Court questions the reasonable necessity of that amount. Even if Debtor only reduced this expense by half, Debtor would still be able to make the $56 monthly payment under the federal government's SAVE program, or the $195 monthly payment under the REPAY plan, and maybe even the $293 monthly payment under the IBR plan. Debtor even stipulated she could make payments under the SAVE plan. ECF No. 21, Ex. 1 ¶ 18 ("While perhaps she could rearrange her budget to afford the $56.00 SAVE payment, [t]he rest of the payments are unaffordable.").

Thus, Debtor has not presented sufficient evidence that she cannot maintain a minimal standard of living if she were forced to repay her student loan debt.

### ii. ADDITIONAL CIRCUMSTANCES

*Brunner*'s second prong requires a debtor show additional circumstances suggest their current state of affairs is likely to persist for a significant portion of the repayment period. *Gerhardt*, 348 F.3d at 92; *Brunner*, 831 F.2d at 396.

Additional circumstances are persistent external factors which arose or worsened after the debtor applied for student loans. *Thomas*, 931 F.3d at 452; *Gerhardt*, 348 F.3d at 92. This prong requires "a debtor [to] specifically prove a total incapacity in the future to pay her debts for reasons not within her control." *McCoy*, 810 F. App'x at 317. Courts have looked at this prong through a post-loan lens and examined the debtor's current and future employment prospects along with the identified external factors. *Id.*; *Thomas*, 931 F.3d at 452; *In re Hough*, 128 F. App'x 369, 371 (5th Cir. 2005); *Gerhardt*, 348 F.3d at 92–93; *Altman*, 2025 WL 969319, at *3; *O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, Case No. 12-33870, Adv. No. 12-03281, 2013 WL 2905275, at *4–5 (Bankr. S.D. Tex. June 13, 2013); *Smith*, 2011 WL 4625397, at *7.

Debtor has not proven her current financial situation will persist for a significant portion of the repayment term. Within the next thirteen months Debtor's granddaughter, whom she cares for and claims as a dependent,[6] will reach the Texas age of majority. After which time Debtor's expenses will likely decrease. No evidence was presented to the contrary. Debtor's desire to support her granddaughter after she turns 18 is noble, but Debtor has no legal obligation to financially support an adult. *See* **In re Blake**, 377 B.R. 502, 512 (E.D. Tex. 2007) ("[T]he Court cannot discharge student loans to allow the debtor to support independent children at the expense of creditors."). One must be just before generous. Even if the granddaughter stayed with Debtor, Debtor has presented no evidence her granddaughter cannot work now or later. Nothing suggests Debtor's granddaughter could not provide for herself or contribute to Debtor's efforts to care for her.

Debtor has not presented evidence for either her or her granddaughter about their medical expenses. Such information would help project Debtor's anticipated future expenses and determine whether or to what extent those expenses may persist. Health problems may be an external factor, but without more information, the Court cannot evaluate the extent to which this external factor may persist or impact Debtor's long-term finances.

Debtor's income may change in the next couple years. Debtor does not present evidence that she is bumping up against an employment ceiling. Just the opposite, Debtor's evidence suggests Debtor is capable of getting better paying jobs but walked away from or declined such jobs because she felt circumstances required it. Debtor has specialized training in various

---

[6] Debtor chose to obtain custody of her granddaughter after her son's addiction and incarceration and the child's mother's apparent abandonment. This choice came well after she took out the student loans. Although Debtor's choice to continue to support and care for her granddaughter is commendable, it is a continuing choice nonetheless and Debtor has not presented evidence of an external factor outside Debtor's control that compelled this continued choice. That Debtor's expenses are higher in part due to caring for her granddaughter does not evidence an inability to repay her student loans so much as a desire to spend her money to care for her near-adult granddaughter.

industries she currently does not work in. She might get a higher-paying human resources job and enter the field for which she incurred the student loan debt. Or she might get a job in the mortgage or insurance industries for which she has many years of experience. Her choice not to obtain a job in these fields since 2021 is not dispositive of whether she *could* obtain a job in those fields sometime in the future. Insufficient evidence was submitted on Debtor's attempts to obtain higher paying employment. Debtor's statement that she has "not received an offer" fails to inform the Court on Debtor's efforts to obtain higher compensation employment. Given Debtor's presentation and testimony the Court finds she is capable of obtaining a higher-paying job sometime in the next couple years.

Because the Court finds a lack of external factors preventing Debtor from obtaining a higher-paying job or reducing her expenses, she has failed to meet this "demanding requirement" of the ***Brunner*** test. ***Gerhardt***, 348 F.3d at 92.

### iii. GOOD FAITH EFFORTS TO REPAY LOANS

***Brunner***'s third prong focuses on whether a debtor has made good faith efforts to repay their government-backed student loans. ***Brunner***, 831 F.2d at 396–97; ***O'Donohoe***, 2013 WL 2905275, at *5; ***Jones v. Bank One Texas***, 376 B.R. 130, 141 (W.D. Tex. 2007).

Courts look at whether a debtor has undertaken "efforts to obtain employment, maximize income, and minimize expenses;" sought out options to consolidate or negotiate their loans; or otherwise demonstrated that they have taken their loan obligations seriously. ***Griffith***, 2021 WL 2762809, at *4; ***O'Donohoe***, 2013 WL 2905275, at *5; ***Jones***, 376 B.R. at 142–43; ***Pratt***, 375 B.R. at 763. Analyzing a debtor's efforts to maximize income and minimize expenses sometimes overlaps with the second prong's analysis on a debtor's job prospects and continuing incapacity to make payments in the future. ***O'Donohoe***, 2013 WL 2905275, at *5. But where the second prong

14

targets external factors preventing a debtor from making payments, the third prong focuses on a debtor's internal actions to increase their chances of paying off their student loans.

Debtor testified she has not received offers for many jobs. But neither the *Stipulation* nor Debtor's testimony identified any specific jobs or employer at which she sought employment, making it impossible for the Court to determine what higher-paying jobs Debtor may have sought.

Debtor presented no evidence on whether she has undertaken or will undertake any effort to obtain financial support from the state of Texas, her granddaughter's parents, or her granddaughter to maximize her income in an effort to mitigate the effect of her expenses and debt obligations. In fact, Debtor testified she has not pursued enforcement or collection actions against her son and her granddaughter's mother despite having a court order entitling her to $200 per month from the child's parents. Debtor's choice to forgo pursuing this stream of income out of fear of losing custody of her granddaughter does not make Debtor's choice into a compulsive act. Additionally, Debtor did not present evidence of her attempts to minimize her expenses. To the contrary, and as stated earlier, the unsupported $200 per month expense for "entertainment" seems unreasonable. Thus, the Court finds Debtor has not undertaken efforts to maximize her income or minimize her expenses to meet her debt obligations.

While Debtor has made payments on her existing loans, her payments appear to have been made to defer the loans and kick the can down the road. Hence, no principal reduction, but also no default. The Court questions whether payments to *defer* a loan count as good faith payments to *repay* a debt. The purpose behind such payments is not to *repay* the loan. See **In re Salyer**, 348 B.R. 66, 73 (Bankr. M.D. La. 2006) (finding **Brunner**'s third prong unmet where the debtors had not made a single student loan repayment). Debtor's evidence that she repaid all of her first student loan of $1,312 does not count as good faith with respect to the repayment of later loans that she

15

now seeks to discharge. That Debtor sought options to help her manage her student loan debt may contribute to, but is not by itself sufficient for, a finding of good faith efforts to repay student loan debt. *Griffith*, 2021 WL 2762809, at *5.

Given the lack of evidence on Debtor's efforts to maximize income and contrasting evidence about Debtor's failure to minimize expenses, and given the dearth of evidence that Debtor has sought to repay her student loan debt in good faith, Debtor has not presented sufficient evidence to satisfy ***Brunner***'s third prong. ***Brunner***, 831 F.2d at 396–97.

**V.    CONCLUSION**

Debtor has failed to present sufficient evidence to satisfy her burden under the ***Brunner*** test and satisfy the Court that allowing her student loan debt to remain non-dischargeable would create an "undue hardship" for her. For this reason, the Court will deny the parties' *Joint Motion.* It is, therefore,

**ORDERED** that the parties' *Joint Motion for Entry of Consent Judgment* (ECF No. 21) is **DENIED.** It is further

**ORDERED** that Debtor's student loan obligations presented to the Court are non-dischargeable and the Court will enter a separate judgment to that effect.

# # #